*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
April 15, 2021

v

BRIAN EDWARD BROOKS,

Defendant-Appellant.

No. 350631
Oakland Circuit Court
LC No. 2018-267401-FH

Before: BECKERING, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), for which he was sentenced as fourth-offense habitual offender, MCL 769.12, to 330 days in jail with credit for 183 days. On appeal, defendant challenges the trial court's denial of defendant's pretrial motion to suppress a search warrant for a GPS tracking device placed on defendant's vehicle, asserting the warrant lacked probable cause. We affirm.

## I. FACTUAL BACKGROUND

In June 2018, Oakland County Narcotics Enforcement Team Detective Austin Bishop filed an affidavit requesting a warrant to place a GPS tracking device on a 2006 Mercury Milan frequently used by defendant.[1] The affidavit stated that Detective Bishop had learned from a confidential informant that defendant would be purchasing approximately 4 ounces of methamphetamine from California, having it shipped to Muskegon, Michigan, and transporting it back to Oakland County in the Mercury Milan. The warrant was approved, and thereafter, Detective Bishop placed the tracking device on the vehicle.

A few days later, police learned from the tracker that the vehicle was traveling toward Oakland County. Detective Bishop and several other detectives began to travel toward the

---

[1] The vehicle purportedly belonged to defendant's father, but Detective Bishop witnessed defendant using the vehicle multiple times in the days leading up to the warrant request.

Mercury Milan's projected location. When defendant began driving north on I-75, the detectives contacted Hazel Park Police Officer Ryan McCabe, informed him that defendant had two current warrants out for his arrest, and instructed Officer McCabe to stop defendant. An inventory search of the Mercury Milan uncovered two packages of methamphetamine and other drug-related paraphernalia.

Defendant was charged with possession of methamphetamine, MCL 333.7403(2)(b)(*i*), delivery and manufacture of methamphetamine, MCL 333.7401, and driving on a suspended license, MCL 257.904. Defendant moved to suppress the evidence obtained from the search of his vehicle, arguing that the search warrant related to the GPS tracking device lacked probable cause. Specifically, defendant contended that there was little reason to believe that the confidential informant was reliable or that his allegations were based on personal knowledge. The trial court denied defendant's motion, finding the affidavit contained information that demonstrated the reliability of the informant, including a number of details that were personally verified by Detective Bishop prior to submitting the affidavit.[2] Ultimately, a jury convicted defendant of possession of methamphetamine, and acquitted him of the other two charges. Defendant now appeals his conviction.

## II. ANALYSIS

Defendant argues the trial court erred when it denied his pretrial motion to suppress the evidence because the affidavit supporting the search warrant was insufficient to establish probable cause, and the warrant was therefore defective. We disagree.

"Questions of law relevant to a motion to suppress evidence are reviewed de novo." *People v Keller*, 479 Mich 467, 473; 739 NW2d 505 (2007) (quotation marks and citation omitted). However, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' " *People v Russo*, 439 Mich 584, 603-604; 487 NW2d 698 (1992), quoting *Illinois v Gates*, 462 US 213, 236-237; 103 S Ct 2317; 76 L Ed 2d 527 (1983). "Affording deference to the magistrate's decision simply requires that reviewing courts ensure that there is a substantial basis for the magistrate's conclusion that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.' " *Russo*, 439 Mich at 604, quoting *Gates*, 462 US at 238.

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects[] against unreasonable searches and seizures." US Const, Am IV. It also states that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id*. Likewise, the Michigan Constitution provides that "[n]o warrant to search any place or to seize any person or things or to access electronic data or electronic communications shall issue without describing them, nor without probable cause, supported by

---

[2] Defendant later moved to suppress the evidence a second time on the basis that it was obtained through an illegal stop. The trial court also denied that motion, and defendant does not challenge that denial on appeal.

-2-

oath or affirmation." Const 1963, art 1, §11. "Generally, evidence obtained in violation of the Fourth Amendment is inadmissible as substantive evidence in criminal proceedings." *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000). The United States Supreme Court has held that the attachment of a GPS tracking device to someone's car is a search requiring probable cause. *United States v Jones*, 565 US 400, 404; 132 S Ct 945; 181 L Ed 2d 911 (2012).

Probable cause exists "where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996). Probable cause must be based on facts presented in a signed affidavit to a magistrate, who then decides whether to issue a warrant on the basis of the affidavit's contents. *People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009). "When probable cause is averred in an affidavit, the affidavit must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs." *Id*. at 698. When reviewing a search warrant and underlying affidavit, we read them "in a common-sense and realistic manner." *People v Whitfield*, 461 Mich 441, 446; 607 NW2d 61 (2000) (quotation marks and citation omitted).

Probable cause can be established on the basis of information obtained from an anonymous informant, but the affidavit must contain "affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable." MCL 780.653(b). The United States Supreme Court has held that, in determining the legitimacy of an anonymous tip, the informant's "veracity," "reliability," and "basis of knowledge" are all relevant considerations. *Gates*, 462 US at 230. A judge's job in considering the affidavit is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him," there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 238. A warrant may issue "if the police have conducted an independent investigation to confirm the accuracy and reliability of the information regardless of the knowledge and reliability of the source." *Waclawski*, 286 Mich App at 699.

Defendant claims the search warrant in this case lacked probable cause because there was no showing that the informant's allegations came from personal knowledge. Specifically, defendant argues that the informant failed to provide sufficiently detailed information about defendant's actions, defendant's plans, and the kinds of narcotics that would be involved, and that the informant's lack of detail suggests the informant's allegations were not made on the basis of personal knowledge. We disagree.

As the trial court noted, much of the information provided by the informant was corroborated by subsequent police surveillance, including defendant's address, defendant's presence at that address, the Mercury Milan vehicle, and circumstances that suggested to Detective Bishop that narcotics were, in fact, being sold by defendant.[3] These facts all suggest the informant

---

[3] Prior to obtaining the warrant and attaching the GPS device, Detective Bishop observed defendant's home and witnessed "short term, heavy traffic," which Detective Bishop understood to be "consistent with the sale of narcotics."

had a personal "basis of knowledge" that supported his or her reliability. *Gates*, 462 US at 230. They further support the issuance of a warrant because Detective Bishop "conducted an independent investigation to confirm the accuracy and reliability of the information." *Waclawski*, 286 Mich App at 699. And, the fact that the informant had previously provided information leading to the execution of two search warrants in Oakland County further supported the reliability of the informant. See *Gates*, 462 US at 244-245 (indicating that the reliability of an informant's allegations may be bolstered by the fact that the informant provided reliable information in the past).

Additionally, defendant's argument that the information provided by the informant was not sufficiently detailed is without merit. The informant specified the exact number of ounces of methamphetamine that was to be purchased, the state it would be shipped from, the address it would be shipped to, the vehicle that would be used to transport it to Oakland County, the license plate number of that vehicle, and the identity of the driver. The informant even described defendant's wariness and suspicion of law enforcement, further suggesting that his or her information came from personal knowledge of defendant. This detailed information, much of which was confirmed by police surveillance, strongly suggested that the information provided by the informant was reliable and credible.

Defendant refers us to *People v Wares*, 129 Mich App 136, 138; 341 NW2d 256 (1983), wherein a confidential informant participated in "controlled buys" of narcotics from the defendant prior to providing information in support of a warrant. The suggestion seems to be that, because the informant in this case did not participate in similar controlled transactions, the informant cannot be considered credible or cannot be said to have had personal knowledge of the allegations. This argument is unavailing; there is simply no requirement that a confidential informant must personally purchase narcotics from a defendant before she or he can be said to have personal knowledge that a crime has been or is going to be committed. Moreover, as noted above, the consideration of a search warrant is one involving the entirety of the circumstances and facts in the affidavit, *Gates*, 462 US at 238; *Waclawski*, 286 Mich App 634, 698, and many of the facts alleged by the informant in this case were later verified by Detective Bishop before his warrant request was made.[4]

---

[4] As an aside, even assuming arguendo that the search warrant in this case was defective for lack of probable cause, we would nonetheless conclude that suppression is not an appropriate remedy. First, the Supreme Court of the United States provided in *Utah v Streiff*, ___ US ___, ___; 136 S Ct 2056, 2064;195 L Ed 2d 400 (2016), that, in circumstances such as this, even where the initial stop may be illegal, the existence and discovery of valid warrants for a defendant's arrest attenuates the connection between the unlawful stop and the evidence seized such that the evidence may later be admissible at trial. Here, even assuming the warrant that permitted the placement of the GPS tracking device was invalid, defendant was arrested on the basis of additional outstanding warrants, and was searched incident to the same. Second, we would further conclude that the good-faith exception to the warrant requirement applies. When the police rely in good faith on a search warrant, the items they seize need not be suppressed even if the warrant they relied on is later declared invalid. *People v Goldston*, 470 Mich 523, 525-526; 682 NW2d 479 (2004). In such

For all of the above reasons, the trial court did not err in denying defendant's pretrial motion to suppress.

Affirmed.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan

---

cases, suppression is only proper in a limited number of circumstances such as where the judge is misled by knowingly false statements, where the judge abandons his judicial role such that "no reasonably well trained officer should rely on the warrant," or where the warrant is so lacking in details and particulars that no officer could reasonably believe it to be valid. *United States v Leon*, 468 US 897, 923; 104 S Ct 3405; 82 L Ed 2d 677 (1984). All evidence suggests that Detective Bishop relied in good faith on the search warrant, and none of the additional circumstances that would otherwise permit suppression are present in this case.